IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASSANDRA STEEN, Individually, and
as Personal Representative of the Estate of
Victor Damarius Steen,

       Plaintiff,

v.                                 CASE NO.: 3:11-cv-00142/RV-CJK

CITY OF PENSACOLA, a political subdivision
of the State of Florida; JOHN W. MATHIS, in
his individual capacity as Pensacola Police
Department Chief; JERALD L. ARD, in his
individual capacity as a Pensacola Police Officer,

       Defendants.
_____/

## DEFENDANT MATHIS' SUPPLEMENTAL MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS

**COMES NOW**, John W. Mathis, "in his individual capacity as Pensacola Police Department Chief" by and through his undersigned attorneys, and, as invited by the Court in its "Order" of June 6, 2011, hereby files this his Supplemental Memorandum of Law in Support of his Motion to Dismiss.

Defendant Mathis' original Motion to Dismiss tried to divine from the overlapping and blurred recitations in the Second Amended Complaint whether liability was sought to be imposed against Mathis individually or against him in his official capacity. Because the Second Amended Complaint not only mentioned that Mathis was sued individually but for his role as Chief, because it did not mention any personal active involvement by Chief Mathis, and because it sought to impose constitutional liability on Mathis for his policymaking, it was not clear whether Plaintiff intended individual capacity liability, official capacity liability, or both.

To the extent that Plaintiff states, either by intention or inadvertence, a claim against Mathis in his official capacity, Mathis adopts and renews his argument as stated in his original memorandum that he is an unnecessary and redundant party because the Plaintiff has also named the correct party: the City of Pensacola. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1999). Suing an officer in his official capacity is simply another way of pleading an action against an entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 165 (1978).

This Supplemental Memorandum of Law is directed to the individual capacity aspects of the claim. Defendant Mathis raises "qualified immunity" for Mathis not as "an after-thought" but as a primary focus to be raised prominently at the pleading stage, at the case dispositive motion stage, at the Federal Rule 50(b) stage, and on appeal as circumstances may dictate.

Supervisory officials are not liable under §1983 for unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999). Historically, under rare circumstances individual "supervisory liability," as distinguished from official capacity liability, could be imposed where it was shown either that a supervisor personally participated in unconstitutional conduct or when there was shown a causal connection between the personal actions of a supervisor and a constitutional deprivation. Brown v. Crawford, 906 F.2d 667 (11th Cir. 1990).

The doctrine of qualified immunity rides along on an intersecting path. Qualified immunity protects individual officers from personal liability so long as the actions of the officers are not contrary to clearly established law. Harlow v. Fitzgerald, 457 U.S. 800 (1982). This protects the individual officer from the burdens of standing trial, including discovery, where there remain areas of uncertainty as to relevant law. Anderson v. Creighton, 483 U.S. 635 (1987). Once an individual

has established that he was acting within the scope of his discretionary authority the burden is the plaintiff's to prove the defendant is not entitled to qualified immunity. Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002). To defeat a motion to dismiss, the plaintiff must plead that the actions violated the Constitution and, if that step is met, must then show that the constitutional right in question was clearly established. Hope v. Pelzer, 536 U.S. 730 (2002). Failing this, the individual defendant is entitled to dismissal before the commencement of discovery. Cotton v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

The question becomes then has this plaintiff sufficiently pleaded that Mathis' actions as a supervisor were unconstitutional and that his constitutional obligations under the circumstances were clearly established? Until relatively recently, this circuit held those pleading constitutional claims against individuals to a "heightened standard." To state a claim and survive dismissal a plaintiff had to plead relevant facts "with some specificity." Mere "vague and conclusory" allegations would not suffice. Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008); Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

In 2008, the Supreme Court decided Ashcroft v. Iqbal, 129 S.Ct. 1937 (2008) which, in considering qualified immunity in the context of the sufficiency of pleadings which sought individual liability against the Attorney General of the United States and other high ranking government officials, required instead that the plaintiff must plead "sufficient factual matter" to show not only that the official in question adopted and implemented a constitutionally invasive policy but did so not with mere knowledge of but with the purpose to violate rights. Importantly, the court commented, at 1949:

3

> "In a §1983 suit or a <u>Bivens</u> action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required. ..."

Judge Souter's dissent, joined by three other court members, asserted that the inevitable effect of the <u>Iqbal</u> decision was to put an end to the concept of individual supervisory liability. He wrote bluntly:

> "Lest there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating Bivens supervisory liability entirely."

Defendant agrees and argues it is not just the end of individual supervisory liability in <u>Bivens</u> actions, but as to all such claims brought under §1983.

<u>Iqbal</u>, by implication, called into question the continued vitality of the Eleventh Circuit's heightened pleading requirement. A revision was called for. In <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010) the court abandoned its heightened pleading requirement saying its use had effectively been overruled by <u>Iqbal</u>. It said <u>Iqbal</u> ruled and that when considering individual qualified immunity raised by motion to dismiss:

> "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations. The district court should assume, on a case by case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." <u>Randall</u> at 709-510.

This means then that the mere chanting of boilerplate allegations without allegations of actual facts still will not meet the pleading minimum standard to survive dismissal. Candidly, this feels

like there is still a somewhat heightened pleading standard but its height has been lowered slightly to align with Iqbal and Rule 8.

It remains true that the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous. Gonzalez v. Reno, 325 F.3d 128, 1234 (11th Cir. 2003). The failure to plead any specific facts that supervisors personally directed guards not to supervise or to act unlawfully or even one prior incident sufficient to notify supervisors of a duty to act did not even meet "a relaxed pleading requirement." Cotton v. Jenne, 326 F.3d 1352, 1362, fn. 7 (11th Cir. 2002). Allegations that a police chief was on scene and approved orders permitting a police line to advance while beating unarmed demonstrators and discharging projectiles and tear gas did survive dismissal under the new post-Iqbal pleading standards. Keating v. City of Miami, 598 F.3d 753 (11th Cir. 2010).

This now Second Amended Complaint is classically an offering of legal conclusions without sufficient factual particularity. There are no allegations that Mathis was present, knowledgeable as the events unfolded or consulted personally, directly or indirectly by Officer Ard. Mathis is not mentioned in the section of the Second Amended Complaint labeled "III. Facts Applicable to All Counts." There are no allegations concerning previous instances of taser deployment at persons on bicycles or other modes of transportation which would place Mathis on notice of a duty to do anything other than what he was doing. The allegations against Mathis are precisely the kind of insufficient pleading of legal conclusions that are still subject to dismissal in the wake of Iqbal. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" still do not suffice. Iqbal at 1955. These are the barest of threadbare recitals.

5

As previously noted, qualified immunity has two phases. First one asks whether a constitutional violation has been pleaded. Second, one asks whether the right in question has been clearly established. If the answer to the former is no, the second question is essentially moot. At this point the pleading is so devoid of sufficient factual allegations but so burdened with legal conclusions, it is not even completely clear what the relevant right is. This motion is directed primarily to the first of the two qualified immunity questions. However, on the second, plaintiff must show that on October 8, 2009, there was a clearly established constitutional duty to adopt a policy and to train police officers that a taser could not be deployed to stop a person fleeing from an investigative detention on a bicycle.

Though by October 2009, Florida had adopted a statute which permitted taser deployment upon only those who were engaged in active physical resistence for the purpose of harming the officer or for the purpose of escape,[1] that statute does not state a constitutional standard. The <u>constitutional</u> standard permits force which is reasonable. What is reasonable is dependent upon facts and context. <u>Scott v. Harris</u>, 127 S.Ct. 1769 (2007). In October 2009, it had not been clearly established (and frankly has not as yet been clearly established) that the constitution is violated by the use of a taser on a person fleeing on a bicycle. In September 2008, the Eleventh Circuit concluded repeated taser deployments on a non-compliant <u>handcuffed</u> misdemeanor arrestee did not violate the constitution.   <u>Buckley v. Haddock</u>, 292 Fed.Appx. 791 (11th Cir. 2008).

<u>Buckley</u> followed <u>Draper v. Reynolds</u>, 369 F.3d 1270 (11th Cir. 2004) which concluded the tasing of an agitated truck driver who was belligerent, excited and who spoke loudly and who gestured in an animated fashion but who had committed no crime did not offend the constitution.

_____

[1] Florida Statute 943.1717.

As counterpoint to these decisions, the Eleventh Circuit concluded the repeated tasing of a "fidgety" disoriented may who had been standing in a roadway median who later died violated the Constitution but it was not decided until weeks after Mr. Steen's death.  Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009).  It has also concluded that the deployment of a taser on a person who has just walked away from a deputy was not constitutionally permissible.  Powell v. Haddock, 366 F.Appx. 29 (11th Cir. 2010).

However, neither Powell nor Oliver had been decided on October 3, 2009 when Mr. Steen died.  Plaintiff must show that the law was clearly established in North Florida on the day of the incident that taser deployment on a person actively fleeing an investigative detention on a bicycle violated the Constitution.  Floyd v. Corder, Case No. 10-15915, (11th Cir. decided May 13, 2011). Jenkins v. Talladega City Bd. of Education, 115 F.3d 821, 826 fn. 4(11th Cir. 1997); Hamilton v. Cannon, 80 F.3d 1525 (11th Cir. 1996).

For a point of law to be clearly established, the relevant legal principle must be delineated not in broad and sweeping generalizations such as that the right to due process is clearly established but in a fact specific and hence more relevant sense. Anderson v. Creighton, 107 S.Ct. 3034 (1984). That is not to say that there must be a case which is point for point and fact for fact identical to the behavior being scrutinized before a legal principle can be clearly established but pre-existing decisional law must give "fair warning" of the unconstitutionality of a chosen course of action before qualified immunity can be overcome. Hope v. Pelzer, 122 S.Ct. 2508 (2002).  Generally speaking, the unlawfulness of the law enforcement conduct must be established by pre-existing case law which is sufficiently similar in facts to the facts in issue so that a reasonable person would be given fair warning that a constitutional right was being violated. Willingham v. Loughnan, 321 F.3d 1299 (11th

7

Cir. 2003). There can be circumstances where, even without a fact-specific case on point, any officer would know the constitution would not permit a particular application of force. These are known as "obvious clarity" cases. An example of one would be that an officer would know the Constitution prohibits tasing a 53 pound six year old armed with a ½ inch piece of glass being confronted by two police officers in a school principal's office. Moretta v. Abbott, 280 Fed. Appx. 823 (11th Cir. 2008). However, obvious clarity cases are the exception to the rule. Qualified immunity is the rule. Undersigned counsel has been unable to locate any case in which qualified immunity has been addressed in the context of a person being tased while in operation of a bicycle.

## CONCLUSION

**WHEREFORE**, because the Second Amended Complaint pleads only legal conclusions insufficient to state a case of action in the post-Iqbal world of only somewhat heightened pleading standards and because it was never clearly established then (or now) that taser deployment on a person fleeing from an officer who had given lawful orders to stop violated the Constitution, Chief Mathis is entitled to qualified immunity from suit and moves for dismissal of the Second Amended Complaint as to him.

Respectfully submitted,

*/s/ John W. Jolly, Jr.*
**JOHN W. JOLLY, JR.**
Florida Bar No. 291961
*JOLLY & PETERSON, P.A.*
Post Office Box 37400
Tallahassee, Florida 32315
Tel:    (850) 422-0282
Fax:    (850) 422-1913

*Attorney for Defendant John W. Mathis*

8

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document was furnished by CM/ECF Service only to Leonard J. Dietzen, III, Esq., Rumberger, Kirk & Caldwell, 108 South Monroe Street, Suite 100, Tallahassee, FL 32301-1584, Daniel Soloway, Esq., Daniel M. Soloway, P.A., 1013 Airport Boulevard, Pensacola, Florida 32504 and Aaron L. Watson, Esq., Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., 316 South Baylen Street, Suite 600, Pensacola, Florida 32502, this 15th day of June, 2011.

/s/ John W. Jolly, Jr.
JOHN W. JOLLY, JR.