IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA, DIVISION

CASSANDRA STEEN, Individually, and
as Personal Representative of the Estate of
Victor Damarius Steen,

        Plaintiff,

                              Case No.: 3:11-cv-00142/RV-CJK

v.

CITY OF PENSACOLA, a political subdivision of the State
of Florida; JOHN W. MATHIS, in his individual capacity as
Pensacola Police Department Chief; JERALD L. ARD, in his
individual capacity as a Pensacola Police Officer.

        Defendants.
_____/

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HER BRIEF IN OPPOSITION TO DEFENDANT MATHIS' MOTION TO DISMISS

**COMES NOW**, Plaintiff, through undersigned counsel, and files her Supplemental Memorandum of Law in Support of Her Brief in Opposition to Defendant Mathis' Motion To Dismiss filed on May 31, 2011.

The complaint clearly states that Defendant Mathis "is sued in his individual capacity." (2d Am. Compl. ¶ 15.) Any doubt about this should have been cleared up by the Plaintiff's response to Defendant Mathis' Motion to Dismiss. (Doc. 40, at 1.)

Plaintiff now files her supplemental brief on the qualified immunity issue, as directed by the Court's order (Doc. 41).

-1-

Plaintiff notes that Defendant Mathis filed his brief on June 15, five days prior to the date suggested by the Court. This early filing was not coordinated between the parties, and the Court's simultaneous briefing schedule now cannot be followed. As Plaintiff reads the Court's Order, Defendant Mathis still has the right to respond to this brief. This puts Defendant Mathis in the unfair position of getting the first and the last word. Should Defendant Mathis have anything noteworthy in response, Plaintiff intends to seek leave to reply to it.

## I. QUALIFIED IMMUNITY STANDARD.

"The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998). The Supreme Court has established a two-part test for determining whether an officer is entitled to qualified immunity, and the district court has discretion to determine in what order to address each part. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). The Court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court must also determine whether the constitutional violation was clearly established. *Saucier*, 533 U.S. at 201.

## II. SUPERVISORY LIABILITY STANDARD.

Under § 1983, a supervisor can be held liable for his subordinates' constitutional violations if there is a "causal connection" between the supervisor's actions—or inactions—and the constitutional violation those subordinates commit. *AFL-CIO v. City of Miami*, 637 F.3d

1178, 1190 (11th Cir. 2011).  The Eleventh Circuit has delineated three ways to establish a causal connection:

> A causal connection may be established when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).

When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1341 (11th Cir. 1998). Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law. *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier*, 533 U.S. at 201).

### III. SUPERVISORY LIABILITY SURVIVED IQBAL.

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court recently held that "purpose rather than knowledge is required to impose *Bivens* liability on ... an official charged with violations arising from his or her superintendent responsibilities." *Id.* at 1949; *see also Id.* ("each Government official ... is only liable for his or her own misconduct"). This announcement has generated significant debate about the continuing vitality and scope of supervisory liability not only in *Bivens* actions, but also in § 1983 suits. In his dissent, which Defendant Mathis so contentiously emphasizes, Justice Souter, joined by Justices Stevens, Ginsburg, and Breyer,

concluded the majority did not merely narrow, but rather eliminated supervisory liability altogether. *Id.* at 1957 (Souter, J., dissenting). Justice Souter surmised that even if Iqbal's complaint sufficiently alleged Ashcroft and Mueller's "knowledge and deliberate indifference, [the majority] presumably would still conclude that the complaint fails to plead sufficient facts and must be dismissed." *Id.* at 1958 (Souter, J., dissenting).

Much has been made about this aspect of *Iqbal*, but consensus as to its meaning remains elusive. In his Motion to Dismiss, Defendant Mathis claims that *Iqbal* has changed the § 1983 supervisory liability landscape, arguing that the Court's decision "finally puts to rest the notion of individual supervisory liability." (Doc. 40, at 5). The Court has yet to expand on the significance of *Iqbal*, and while some agree with Justice Souter's view of the majority's opinion, lower courts that have since examined this issue have found the continued vitality of supervisory liability. Though the Eleventh Circuit has not spoken directly to this issue, *Iqbal* does not signal the end of individual supervisory liability. As noted in all of the 11th Circuit cases cited previously by Plaintiff (Doc. 41, at 8-9), liability can very well be imposed on the individuals who create policies and customs roughly on the same evidentiary basis as would support a finding of municipal liability. Thus, since even Defendant Mathis concedes that liability may be found against the City of Pensacola, Plaintiff contends that Defendant Mathis is likewise exposed to liability, but on an individual, supervisory level.

Whatever can be said of *Iqbal*, the allegations contained in Plaintiff's Second Amended Complaint are sufficiently detailed to give fair notice to Defendant Mathis of the nature of the claim so that he may effectively defend against it. Secondly, the allegations in the Complaint are plausible, not mere "conclusory" statements. That they may or may not ultimately be proven by evidence, or are allegedly not probable, is irrelevant at this early stage of the case. Rule 8(a)

"does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Lastly, to the extent that *Iqbal* were to apply to the instant matter, application of such standard would necessarily compel the striking of all Defendant Mathis' affirmative defenses as well, as this defendant seeks to impose a pleadings burden on Plaintiff that not only does not exist in law, but that he himself does not abide by in fact.

### IV.     THE MISCONDUCT CONSTITUTES A CLEAR VIOLATION OF MR. STEEN'S CONSTITUTIONAL RIGHTS UNDER LAW CLEARLY ESTABLISHED.

Qualified immunity does not apply where a governmental official engages in conduct that violates clearly established statutory or constitutional rights. *Bashir v. Rockdale County*, 445 F.3d 1323, 1327 (11th Cir. 2006). For a right to be 'clearly established,' previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *GJR Invs., Inc.*, 132 F.3d at 1366. Governmental actors like Defendant Mathis may rely on the decisions of lower federal courts in determining whether a right is "clearly established."  However, these decisions do not support Defendant Mathis' position that he had no reason to believe his conduct was unlawful.

The right alleged to have been violated here was Mr. Steen's Fourth Amendment right to be free from the excessive use of force, and accordingly, the Fourth Amendment is the guide for analyzing Defendant Mathis' actions.  Stated more particularly, Mr. Steen was subjected to excessive force when Officer Ard fired a Taser stun gun out of the window of a moving police car at Mr. Steen in circumstances likely to cause substantial bodily injuries and death. Mr. Steen

was again subject to excessive force when he was intentionally rammed by Officer Ard's cruiser.

An examination of the circumstances of this case as asserted in Plaintiff's Second Amended Complaint demonstrates an obvious constitutional violation of clearly established law. Contrary to the position taken by Defendant Mathis in his Supplemental Brief, there is no uncertainty that the right to be free from such excessive force of the quality and caliber employed against Mr. Steen was indeed clearly established at the time of incident. Moreover, *Vinyard*, indicates that, at the time of the incident, our case law established that the use of a pepper spray, which is regarded to be of similar "less lethal" nature to the Taser, in a similar situation violated the suspect's constitutional rights. *Vinyard*, 311 F.3d at 1340. Although the Eleventh Circuit could not locate a controlling pre–1998 decision about the use of pepper spray, the court held that courts in other jurisdictions had "consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." *Id.* at 1348. Prior to and throughout October, 2009, it was clearly established that such "intermediate force," as would most certainly encompass the usual deployment of a Taser, could not constitutionally be used against a nonthreatening suspect when the alleged suspect's crime was a minor offense. *See Id*. at 1347 (holding that it violates the Fourth Amendment to use pepper spray on an individual suspected of resisting an officer when that individual was not posing a threat). Indeed, the Eleventh Circuit has found that it is not always necessary to identify specific cases that are factually on all fours if a use of force is clearly excessive.[1] *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000). In *Priester*, the Court of Appeals considered

---

[1] And requiring plaintiffs to find ever more similar past cases has the effect of making Fourth Amendment law a one-way ratchet: there is always a way to slice the cheese ever more finely and to distinguish away past cases as just not similar enough.

whether it was clearly established (as of 1994) that it was excessive force to attack a submissive burglar with a police K–9. *Id.* The plaintiff was suspected of a minor burglary and immediately surrendered once he was discovered. *Id.* Accepting the burglar's allegations, he did not pose a threat to anyone. *Id.* Nevertheless, the police officer unleashed his dog to bite the plaintiff for two painful minutes. *Id.* The Eleventh Circuit held that amount of force was so disproportionate that the plaintiff was excused from citing cases condemning this kind of K–9 attack. "Although the clearly-excessive-even-in-absence-of-case-law standard is a difficult one to meet, we think that, on the facts of this case, the law was clearly established ... that what [the policeman] did violated Plaintiff's constitutional rights." *Id.*

Another case involved an arrest after the use of a Taser. *Powell v. Haddock*, 366 F. Appx. 29, 30 (11th Cir. 2010).  The suspect was involved in a "family altercation at the side of a highway."  *Id.  The police officer shot the suspect in the chest with a Taser after she took a few steps away from him and belligerently said, "you're going to do what?"  Id*.  The Eleventh Circuit denied qualified immunity to the officers, noting that there was "no evidence that Powell's 'behavior was violent, aggressive, and prolonged' or that she was a 'danger to herself and others.'"  *Id*. at 31.  And the court held that, as of 2006, "it was clearly established . . . that such force cannot constitutionally be used against a non-threatening suspect when the alleged crime of the suspect is a minor offense."  *Id*. That is also the case with Mr. Steen's alleged crime.  Of course, not only was Mr. Steen hit with a Taser, he was then dragged thirty-five feet and pinned under Officer Ard's cruiser.

This Court's recent decision in *Proch v. DeRoche*, No. 3:08cv484, 2011 WL 2134389 at *5 (N.D. Fla. March 31, 2011), is instructive. The facts of *Proch* do not markedly differ from the

instant matter. In *Proch*, this Court ruled that an officer's May, 2008 deployment of a Taser against an individual suspected of mere verbal disturbance following their refusal to comply with clear, lawful orders constituted a clear violation of the suspect's constitutional rights. *Id.* at *2, *5. Mr. Steen, while noncompliant with the Officer's verbal and nonverbal commands to stop the bicycle, was not threatening and, at the time, was at most apparently suspected of operating a bicycle at night without proper lighting. In fact, as described herein, Plaintiff's rights were violated as a direct result of Defendant Mathis' omission of explicit policy language prohibiting, or even discouraging, his officers from utilizing Tasers in such a blatantly unconstitutional manner.

Liberally construing Plaintiff's allegations, as it must, Plaintiff has sufficiently alleged a violation of his constitutional rights under law clearly established at the time of the incident. Defendant Mathis acted with deliberate indifference to the risk that a violation of Mr. Steen's Fourth Amendment constitutional right to be free from excessive force would be abridged. Accordingly, the "clearly established" prong of the qualified immunity analysis has been satisfied and no further inquiry is necessary.

### V. A CAUSAL CONNECTION IS PRESENT BETWEEN DEFENDANT MATHIS' CONDUCT AND THE VIOLATION.

As Defendant Mathis so casually alludes to in his *Supplemental Brief*, "supervisory liability" can be imposed when there is a "causal connection between the personal actions of a supervisor and a constitutional deprivation." (Def's Supp. Brief at 2) (citing *Brown v. Crawford*, 906 F.2d 667 (11th Cir. 1990)). The necessary causal connection may be established when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights" or

when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Cottone v. Jenne*, 326 F. 3d 1352, 1360-61 (11th Cir. 2003) (citations and internal quotation marks omitted). This Circuit has found liability may be imposed due to the existence of an improper policy or the *absence thereof*. *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) (emphasis added). A supervisor may be liable, and thus precluded from qualified immunity, for the deprivation of an individual's constitutional rights stemming from a violation that may not have otherwise occurred had adequate policy been in place at that time. *See Id.* (finding Sheriff liable for failure to establish sufficient and appropriate procedures and policies regarding identification of arrestees, warrantless searches, and computer checks for information).

Before turning to the details of those cases, is important to address the applicable standard that governs. Defendant Mathis avers that he has found no cases involving a Taser being deployed against a bicycle rider. Though initially representing that the showing of an explicit prohibition on "taser deployment on a person actively fleeing an investigative detention on a bicycle" was necessary to demonstrate that the law was clearly established; he professes that qualified immunity can be overcome by pre-existing law that provides "fair warning" of the unconstitutionality in the very next paragraph. (Def's Supp. Brief at 7). "But such fact-specific precedents are not always needed to overcome qualified immunity."*Vinyard*, 311 F.3d at 1355.

Defendant continues to maintain that in order to show he violated Plaintiff's clearly established constitutional rights, and therefore overcome his assertion of qualified immunity as well as hold him liable under § 1983, Plaintiff must essentially demonstrate that the defendant

9

personally participated in such a violation with a sufficiently culpable state of mind. Defendant argues, as a result, Plaintiff has not shown that he committed any act which violated Mr. Steen's rights or that he acted with deliberate indifference to those rights. As police chief for the Pensacola Police Department, Defendant Mathis was directly responsible for formulating policies concerning his officers' "use of force." It was Defendant Mathis' failure to implement adequate policy and procedures that resulted in the violation of Mr. Steen's constitutional rights. In effect, this facially constitutional policy was implemented in an unconstitutional manner-one that ignored the substantial likelihood of Taser-related misconduct. *See Gobert v. Lee County*, 510 F. 3d 1312, 1332 (11th Cir. 2007).

Further, a right is clearly established when, "despite notable factual distinctions between the precedents relied on and the cases then before the Court ... the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Coffin v. Brandau*, No. 08-14358, 2011 WL 2162997 at *21 (11th Cir. June 3, 2011) (citing *Hope*, 536 U.S. at 740) (internal quotation marks omitted).

Under the circumstances, Mr. Steen had not committed any crime, posed no danger to himself, to the officer, or the public, and his pedal-powered ability to flee was easily outmatched by Officer Ard's police cruiser. The lack of well-devised policies and procedures caused the untimely and inexcusable death of Mr. Steen. Thus, there is a significant casual connection between Defendant Mathis and the constitutional violation sufficient to support liability on him.

## IV. THE ANALYSIS BECOMES ONE OF "OBVIOUS CLARITY" WHERE EXISTING CIRCUMSTANCES CONVERT THE USE OF THE TASER INTO "DEADLY FORCE."

The available case law pertaining to Taser usage clearly illustrates that qualified immunity does not exist where the plaintiff was non-violent and posed no threat to himself or others. Past cases fitting this profile provide guidance that no qualified immunity exists here. However, it is important to point out that the Tasering of Mr. Steen differs considerably from the instances referred to by Defendant Mathis. In the majority of cases, the Taser did not have the potential to inflict death or serious bodily injury. Here, we are dealing with an officer that intentionally deployed his Taser from the window of his speeding patrol car at an individual riding on another vehicle (a bicycle), from a distance of no more than eight (8) feet while both vehicles were underway. Such conditions give rise to quite a contrary premise than some intermediate-level force and presented an abnormally high likelihood of serious injury or death to Mr. Steen. In fact, there was essentially no time for Officer Ard to avoid running over Mr. Steen, given the obvious limitations in human reaction time, were he to Taser Mr. Steen under these circumstances.

Situations such as the aforementioned which would likely result in death or serious injury to the fleeing party should be viewed in light of *Tennessee v. Garner*, 471 U.S. 1 (1985). If such methods are to be utilized, officers must be certain that all necessary precautions and procedures are followed explicitly. This necessarily entails that such policies be sufficiently developed; thus imposing duty upon police supervisors to evaluate and improve policy and training that can result in the death of a violator. Policy should reflect that pursuits be terminated at the point

11

where the threat outweighs the benefit of continuation. *See Id.* at 11 ("the harm from failing to apprehend [the suspect] does not justify the use of deadly force to do so.").

Defendant Mathis failed to establish a use of force policy that unequivocally prohibited Taser deployment from or at a moving vehicle. Common sense would inform any reasonable supervisor that there would be substantial risks of death or bodily harm if an officer driving at even a moderate speed used his Taser to incapacitate an individual operating a bicycle in close proximity to the cruiser. See *Vaughan v. Cox*, 343 F.3d 1323, 1332-33 (11th Cir. 2003) ("Applying *Garner* in a common-sense way, a reasonable officer would have known that firing into the cabin of a pickup truck, traveling at approximately 80 miles per hour on Interstate 85 in the morning, would transform the risk of an accident on the highway into a virtual certainty. The facts of this case bear out these foreseeable consequences.").

In evaluating the reasonableness of police procedures under the Fourth Amendment, actual department policies are important. *See Garner,* 471 U.S. at 18-19. The majority of police departments in this country have forbidden the use of deadly force against nonviolent suspects. *Id.* at 10-11. Defendant Mathis knew, and it was foreseeable, that suspects being apprehended by his officers might flee while in operation of a vehicle; including a bicycle. As well should be the scenario where an Officer's vehicle closely trailing could strike the bicycle and/or its occupant resulting in serious injury or death. Though *Garner* dealt with firearms, the Court's intent is unmistakable. As such, forseeability demands policy and training because the likelihood of constitutional violations is so great without such policy and training, that the deliberate indifference of its policymaker/supervisor Defendant Mathis may be inferred. *See Id.* at 18-19.

It is clear that a reasonable police chief in Defendant Mathis's position would have known that affirmative and decisive action was warranted on his part to expressly advise his officers about the limitations of physical force that could be constitutionally utilized to detain/and or compel a suspect into submission.

This case is quite similar to *Maiorano* ex rel. *Maiorano v. Santiago*, No. 6:05cv107, 2005 WL 1200882 (M.D. Fla. May 19, 2005). In that case, the plaintiff was a high school student who was engaged in a minor fight with another student. *Id*. at *1. Without warning, a police officer used a Taser on her. *Id*. at *3. The Middle District of Florida denied qualified immunity to the defendants, finding that the student did not pose a threat to the officers and she should have been warned about the use of force prior to it occurring. *Id*. at *8. Similarly, this Court has found that the use of a Taser on a suspect who, while non-compliant with orders to submit to arrest, was not threatening and did not pose a danger to officers or the public, was clearly improper and violative of the U.S. Constitution. *Proch,* at *5.

The fact that Mr. Steen was riding a bicycle at the time of the Tasering is also significant. A Taser generates high-voltage electricity "designed to cause significant, uncontrollable muscle contractions capable of incapacitating even the most focused and aggressive combatants." *Oliver ex rel. Estate of Oliver v. Fiorino*, 586 F.3d 898, 903 (11th Cir. 2009). This 11th Circuit case, though not directly on all fours with the present matter, demonstrates at the minimum, that Tasering in a grossly disproportionate manner to the threat posed was unlawful during the relevant period. *See Id.* at 907. If the repeated Tasering of the plaintiff in *Oliver* over a two-minute period without warning was excessive, than Officer Ard's conduct in his combined

use of a police cruiser and a Taser would certainly meet or exceed this threshold, especially in light of the practical certainty that Mr. Steen would crash his bicycle, come into contact with Ard's cruiser, and be seriously injured or killed. The implications of Defendant Mathis' failure to include such policies to counterbalance this risk is of such "obvious clarity" that this fatal deficiency cannot be excused, and a jury could conclude that he was deliberately indifferent in his omission.

Almost in passing, Defendant Mathis alludes to *Moretta v. Abbott*, 280 Fed. Appx. 823 (11th Cir. 2008), seeking to set aside, and thus distinguish the present matter from such cases where "obvious clarity"would lead an officer would know that his/her conduct was unconstitutional. Def's Supp. Memorandum at 8. However, Plaintiff contends that the general principle underlying *Moretta* is not as entirely inapplicable to the case at hand as Defendant would like this Court to believe; and in fact furthers Plaintiff's position.

In *Moretta*, as Defendant points out, a 53 pound six year old holding a ½ inch piece of glass in his hand was Tasered by two officers in a school principal's office. While emphasizing that the child seemingly posed no threat to himself or the officers in reaching their conclusion that the child's constitutional rights, the court took care to note the "one-half inch piece of glass (from the broken picture frame) in [the child's] left hand". *Id.* at 825. Defendant fails to make the connection between the totality of the circumstances including not only the age and stature of the child, but also the deceptively obvious danger posed by the shard of glass clutched in his palm. Since the court did not divulge in lengthy discussion as to the motivating factors, it is conceivable that some weight may have been placed upon the obvious hazard created by the

14

glass. While the child may not have threatened harm to himself with the glass, by analogy, the Taser's pulsating electricity inevitably triggers involuntary muscle clenching which would operate to transform this formerly negligible hazard into a dangerous instrumentally, appreciably increasing the risk of injury to Mr. Steen. Yet in *Moretta*, where a weapon could have caused injury to the Plaintiff or law enforcement, the 11th Circuit stated clearly that no qualified immunity shielded the officers. So too, no immunity shields Defendant Mathis herein.

Finally, it is worth noting that, as in *Scott v. Harris*, 550 U.S. 372 (2007), there is a videotape of the entire encounter. Ms. Steen reserves the right to challenge this tape or supplement the record beyond it, but the distinction between the two tapes is unmistakable. The suspect in the *Scott* case led police on a "Hollywood-style car chase of the most frightening sort" that forced cars off the road, "placing police officers and innocent bystanders alike at great risk of serious injury." *Id*. at 379–80. The Supreme Court held that the officer who caused the suspect's injuries in *Scott* was entitled to qualified immunity. By contrast, the low-speed cruiser-versus-bike chase that occurred here put no one in harm's way except Mr. Steen. The tapes speak for themselves, and show clearly that where the "frightening" danger to the community does not exist, qualified immunity does not exist to shield the officer from liability for creating a life or death situation, nor the supervisor for his deliberate indifference to the likelihood of constitutional violations created thereby.

Plaintiff has demonstrated at this stage in the litigation that the contours of the right he claims Defendant Mathis violated were sufficiently clear that a reasonable official in Defendant's position that allowed officers like Ard to use a Taser as a virtual "deadly force" weapon when

15

combined with use of his speeding cruiser, when dealing with nonthreatening suspects under the aforementioned circumstances, violates the Fourth Amendment right to be free of excessive force.  Any reasonable law enforcement officer knows or should know that Defendant Mathis' deliberate indifference in the formulation and implementation of such policies was violative of Plaintiff's federally protected rights.

The complaint sufficiently alleges that the use of the Taser under *these* circumstances *was* unconstitutional. Defendant Mathis knew that, and was deliberately indifferent to the rights of citizens, such as Mr. Steen, some of whom would inevitably be subjected to such unconstitutional uses of force.  Defendant Mathis' failure to set an appropriate policy forbidding the use of a Taser under the circumstances of this case violated Mr. Steen's clearly established right to be free from the excessive use of force under the Fourth Amendment. Accordingly, Defendant Mathis is not entitled to qualified immunity from suit.

### III.     CONCLUSION

**WHEREFORE**, the facts, taken in a light most favorable to Plaintiff, show Defendant Mathis played more than a passive role in the alleged constitutional violation; he deliberately enforced or actively maintained policies for the Pensacola Police Department. Defendant Mathis does not dispute that he was the final policymaker, and as such, was required to ensure that the department's policies were in accord with the Constitution. Though not a "direct participant" in the underlying constitutional violation, allegations contained in Plaintiff's pleadings sufficiently state a causal connection between Defendant Mathis' action and inaction and the death of Mr. Steen. Defendant Mathis failed to establish and maintain appropriate policies and procedures,

and properly train his officers, regarding the use and discharge of Tasers, which allowed for the utilization of this device by Officer Ard in a manner contrary to law clearly established at the time, causing the constitutional tort to Mr. Steen. Thus, Defendant Mathis is not entitled to qualified immunity in the current matter.

Respectfully submitted this 20th day of June, 2011.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Supplemental Memorandum of Law in Support of her Brief in Opposition to Defendant Mathis' Motion to Dismiss has been provided to John W. Jolly, Jr., Esquire of Jolly & Peterson, P. A., Post Office Box 37400, Tallahassee, Florida 32315 (attorneys for Mathis & City of Pensacola) and a copy to Leonard J. Dietzen, III, Esquire of Rumberger, Kirk & Caldwell, 108 South Monroe Street, Suite 100, Tallahassee, Florida 32301 (attorneys for Ard) on this the 20th day of June, 2011.

/S/ *Daniel Soloway*
DANIEL SOLOWAY, ESQUIRE
Florida Bar Number: 508942
Daniel M. Soloway, P.A.
1013 Airport Boulevard
Pensacola, FL 32504
Telephone: (850) 435-0555

AND

/S/ *Aaron L. Watson*
AARON L. WATSON, ESQUIRE
Florida Bar Number: 0071092
Levin, Papantonio, Thomas, Mitchell,
 Rafferty & Proctor, P. A.
316 South Baylen Street, Suite 600
Post Office Box  12308 (32591)
Pensacola, Florida  32502
(850) 435-7105 (Watson)
*Attorneys for Plaintiff*