IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASSANDRA STEEN, Individually
and as Personal Representative of
the Estate of Victor Damarius Steen,

      Plaintiff,

   v.                             Case No.: 3:11-cv-142-RV/CJK

CITY OF PENSACOLA, a political
subdivision of the State of Florida; et al.,

      Defendants.
_____/

**ORDER**

      This case stems from the death of 17 year-old Victor Damarius Steen, who, while fleeing from the police in the early morning hours on October 3, 2009, was killed after being allegedly "tased" and struck by a marked police vehicle driven by Pensacola Police Officer Jerald Ard. The decedent's mother, Cassandra Steen, had filed this excessive force and wrongful death case against Officer Ard; the City of Pensacola; and Police Chief John Mathis. On August 22, 2011, I entered an order dismissing the claim against Chief Mathis on the basis of qualified immunity (doc. 67) ("Mathis Order"). Now pending is Officer Ard's motion for partial judgment on the pleadings (doc. 68), which the plaintiff opposes.[1]

      The plaintiff spends the majority of her memorandum in opposition arguing that the firing of a single taser shot at Steen on the facts of this case constituted

---

[1] The Mathis Order sets forth the background of this case and is incorporated herein. In short, the plaintiff alleges in the amended complaint that Officer Ard used excessive force in deliberately striking Victor with his patrol car (count I) and tasing him (count II). Officer Ard moves for judgment on the pleadings only with respect to count II.

excessive force because he was not suspected of any crime --- let alone a serious one --- and because his fleeing on a bicycle while crossing over four lanes "on an empty street" only posed a danger to himself, if to anyone at all. This argument, however, cannot be reconciled with Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009), a case that was cited several times and discussed at length in the Mathis Order. Oliver involved the repeated tasing (between eight and twelve times) of an individual who "was not accused of or suspected of any crime" but who resisted the police and sought to avoid a "custodial touch" by "attempt[ing] to walk away across the street." The street in Oliver was not only (apparently) empty and devoid of traffic, as here, but it had been rendered a "safe area" insofar as it was blocked with police vehicles. Moreover, in stark contrast to the situation we have here, the individual in that case was "largely compliant and cooperative with the officers," and he otherwise "made no effort to flee." And yet, while the Eleventh Circuit held that it was excessive force to repeatedly taser a person in that situation, the Court of Appeals made a point to note that using a single taser shock to gain control over him in the first instance "may have been justified" (emphasis added).[2]

The preceding discussion is mostly academic in this case, however, as I did not hold that Officer Ard was "justified" in using his taser on the facts presented. To the contrary, I assumed that he was not. See Mathis Order at 17 (because the factual record in the case has not yet been "fleshed out, . . . I will simply assume arguendo that there was a constitutional violation"). Instead, I concluded that it was not "clearly established" in or about October 2009 that using a taser in that situation was unconstitutionally excessive. To be sure, the Oliver court expressly

---

[2] The individual in Oliver was "very fidgety," and the officers testified after-the-fact that they had "considered" taking him into custody pursuant to the Baker Act, Florida's mental health law. However, at no point during the incident did they advise Mr. Oliver of that fact, nor did they attempt to arrest or "Baker Act" him at any time.

stated that (as of October 2009, when Oliver was decided and when the event at issue in this case took place): "[N]either the United States Supreme Court nor the Florida Supreme Court has even addressed the use of Tasers in an excessive force inquiry, and this Court has only squarely done so in one published decision, Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004), which . . . is not directly on all fours with this case." Therefore, if using a single taser shock "may" have been justified in Oliver, perhaps due in part to the absence of existing analogous case law, how was it "clearly established" to be unconstitutional here? Obviously, it was not.[3]

---

[3] In arguing that the use of a taser in this case violated clearly established law, the plaintiff continues to rely on cases that are patently distinguishable. See, e.g., Powell v. Haddock, 366 Fed. Appx. 29 (11th Cir. 2010) (plaintiff tased two times even though she committed no crime and "there was no instruction given that [she] failed to obey"); Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002) (plaintiff pepper sprayed in face two or three times even though she was already secured in handcuffs in back of police car and there was "no indication that she actively resisted the initial arrest or attempted to flee at any time"). The plaintiff contends that in looking to existing case law "identical facts" and "fact specific precedent" is not necessary to decide the "clearly established" question. That is certainly true; and I stated as much in the Mathis Order, when I recognized that: "The Supreme Court '[does] not require a case directly on point.'" However, as I further explained, existing precedent must be sufficiently similar or analogous to have "'placed the statutory or constitutional question beyond debate.'" Mathis Order at 18 (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)). For the reasons discussed in the Mathis Order, the cases on which plaintiff previously relied (and continues to rely) are distinguishable in notable and significant ways; and thus, they have not "placed the statutory or constitutional question beyond debate." To the contrary, Oliver would suggest that, in or about October 2009, the question was very much in debate.

The plaintiff further maintains that "[e]ven if the cases mentioned above did not exist, Ard's conduct would fall under the obvious clarity exception." However, I already discussed in the Mathis Order why this "narrow exception to the normal rule" [Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011)], which is a "difficult one to meet" [Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 927 (11th Cir. 2000) (both emphasis added)], does not apply on the facts of this case; and I need not repeat that analysis here.

Case No.: 3:11-cv-142-RV/CJK

For all the reasons that Chief Mathis was entitled to qualified immunity on the grounds that it was not clearly established in October 2009 that using a taser on the facts presented violated the United States Constitution, so is Officer Ard. Therefore, Officer Ard's motion for judgment on the pleadings as to Count II (doc. 68) must be, and is, hereby GRANTED.

DONE and ORDERED this 30th day of September, 2011.

/s/ Roger Vinson
ROGER VINSON
Senior United States District Judge